UNITED STATES FIDELITY & GUARANTY CO. *v.* MARYLAND
CASUALTY CO. *et al.*

(In Banc.   Dec. 23, 1940.   Suggestion of Error Overruled Feb. 10,
1941.)

[199 So. 278.   No. 34228.]

**Butler & Snow,** of Jackson, for appellant.

Wynn, Hafter & Lake, of Greenville, and Watkins & Eager, of Jackson, for appellee.

Argued orally by **Geo. Butler,** for appellant, and by **W. H. Watkins, Sr.,** for appellee.

**McGowen, J.,** delivered the opinion of the court.

The appellant, United States Fidelity and Guaranty Company, filed its bill in the chancery court seeking to recover from the appellees, Council & Lewy Company and the surety on its bond, the amount of a judgment which had been recovered against it in the federal court by materialmen, also court costs and attorneys' fees.

Nothwithstanding that the court below sustained demurrers to the original bill, there was an amendment of the bill and the case was tried upon a stipulation of facts which admitted practically all of the allegations of the bill, but denied the legal conclusions of the pleader; and upon a full final hearing, the court below dismissed the bill.

Since the court below disposed of the case upon a full final hearing, we think it unnecessary to discuss the demurrer. The facts necessary to state are set forth, as follows:

On October 14, 1932, Dave Elkas entered into a written contract with the United States Government, whereby he agreed, for a stipulated price, to furnish all labor and material required in the construction of levee earthwork, according to Government specifications. Included as a part of that construction work was an item described as "L-290-B," which item alone is involved in this controversy.

Pursuant to this contract, Elkas executed a bond for $102,000 with the appellant, United States Fidelity & Guaranty Company, as surety, for the faithful performance of the contract and for the prompt payment of all debts incurred for labor and materials furnished to Elkas for the prosecution and completion of that construction job.

After Elkas executed the above-mentioned contract and bond, he entered into an oral contract with Jack Martin and J. E. Pryor for the construction of the levee item, L-290-B, in which oral contract Martin & Pryor agreed to furnish all labor and material and perform the necessary work to complete that item in accordance with Elkas' original contract with the Government.

On November 28, 1932, Pryor sold his interest in the firm of Martin & Pryor to P. P. and T. M. Carrithers, and thereupon the firm of Martin & Carrithers Brothers agreed to perform the contract with Elkas as to L-290-B, and the latter firm entered upon a performance of that contract until January 3, 1933, on which date Elkas and Martin & Carrithers Brothers entered into a written contract, by which the latter was to perform Elkas' contract with the Government in accordance with the specifications, as to the item in controversy. Martin & Carrithers Brothers agreed therein to perform and complete all of Elkas' obligations so far as that item was concerned,

and they further agreed to execute a bond in Elkas' favor for $33,000, which bond "shall completely indemnify Elkas from any failure of Martin & Carrithers Brothers to perform each and all of the obligations of this contract." The bond was to be a part of the contract and was to contain the same provisions and conditions as the bond executed by Elkas to the Government, limited to the item in controversy.

Martin & Carrithers Brothers failed to execute a bond, but entered upon the construction work between January 3, 1933, and January 14, 1933, and on the latter date assigned in writing their contract to Council & Lewy Company, being all of their right, title, interest and benefits in their contract with Elkas. This assignment included money previously earned by Martin & Carrithers Brothers, and stated that Elkas should pay same to Council & Lewy Company. This assignment was executed by Martin & Carrithers, Dave Elkas and Council & Lewy Company, on January 14, 1933.

On January 31, 1933, Council & Lewy Company, as principal, executed a bond with the Maryland Casualty Company, as surety, in the sum of $33,000 in favor of Elkas, as obligee, conditioned that Council & Lewy Company had entered into a contract with Elkas on January 14, 1933, for constructing the levee item in controversy. On January 14, 1933, Council & Lewy Company sublet their contract to Martin & Carrithers Brothers as to said item, reserving to itself the option to construct 200,000 cubic yards of said work on the north end of said project. Elkas was to pay Council & Lewy Company 14 cents per cubic yard, and the latter was to pay Martin & Carrithers Brothers 13½ cents per cubic yard. Subsequent to January 14, 1933, Martin & Carrithers Brothers performed in part this contract, but Council & Lewy Company completed it later.

Prior to January 3, 1933, Martin & Carrithers Brothers earned on their contract $3,702.60. Between January 3rd and 14th, 1933, they earned $960.34. Prior to January

14th, Martin & Carrithers Brothers incurred debts for labor and material on this project in the total sum of $3,847.26, of which $2,476.16 was incurred by Martin & Carrithers Brothers prior to January 3, 1933. $1,043.81 was incurred by Martin & Carrithers Brothers between January 3rd and 14th, 1933, and $327.29 was incurred by Martin & Carrithers Brothers after January 14, 1933.

The federal court at Clarksdale rendered a judgment against Elkas and the United States Fidelity & Guaranty for the above-mentioned sums, with interest thereon. Prior to this federal court judgment, the United States Fidelity & Guaranty Company demanded in writing that the Maryland Casualty Company, as surety of the Council & Lewy Company, defend the suit. This, the casualty company declined to do. The judgment in the federal court dismissed the suit as to these appellees and others, without adjudicating their rights inter sese. The appellant, the United States Fidelity & Guaranty Company, paid all of the judgment and costs in March, 1936, including fees allowed an auditor and stenographer.

The basis of the liability contended for by the appellant is the contract or assignment dated January 14, 1933, and the bond of Council & Lewy Company payable to Elkas dated January 31, 1933. Referring to the written contract by Martin & Carrithers Brothers and Elkas, the obligation of that contract was that Martin & Carrithers Brothers ''hereby agree to furnish all labor and materials and perform all work required for the construction of said earth work known as Item L-290-B in strict accordance with the plans, specifications, schedules and drawings which are attached and made a part of the original contract . . . just as if fully copied herein.

''It is further agreed that the parties of the second part (Martin & Carrithers Brothers) shall complete and perform all the obligations imposed on the party of the first part by said contract in respect to said Item L-290-B; and the parties of the second part shall, in all details,

strictly comply with the aforesaid original contract;
. . .

"It is further understood and agreed and made a condition of this contract that the parties of the second part shall furnish to the party of the first part (Elkas) a bond in some Surety Company, to be approved by the party of the first part, which bond shall completely indemnify the party of the first part from any failure of the parties of the second part to perform each and all obligations of this contract . . ."

The bond referred to was never furnished by Martin & Carrithers Brothers to Elkas.

Coming now to the pertinent part of the contract entered into and executed by Council & Lewy Company, Dave Elkas and Martin & Carrithers Brothers on January 14, 1933, we find recited therein that "the parties of the first part do hereby set over and assign all of their right, title, interest and benefits under the conditions of the contract dated the 3rd day of January, 1933" (naming the parties to the contract). This contract was assigned to Council & Lewy Company. Elkas agreed therein to deliver all of the money to Council & Lewy Company which he was to pay under the original contract to Martin & Carrithers Brothers; Martin & Carrithers Brothers assented to that arrangement; and "the same (levee contract) to be performed in accordance with the terms and specifications on file in the office of the United States Government Engineer, in Memphis, Tennessee." Now, as to the bond executed by the Maryland Casualty Company as surety of the Council & Lewy Company. The stipulation in the bond was: "Now, therefore, if the principal shall well and truly perform and fulfill all the undertakings, covenants, terms, conditions and agreements of said contract during the original term of said contract and any extensions thereof that may be granted by the Obligee with or without notice to the Surety, and during the life of any guaranty required under the contract, and shall also well and truly perform and fulfill

all the undertakings, covenants, terms, conditions, and agreements of any and all duly authorized modifications of said contract that may hereafter be made, notice of which modifications to the surety being hereby waived, and if said contract is for the constructions or repair of a public building or a public work within the meaning of the act of August 13, 1934, as amended by act of February 25, 1905, shall promptly make payment to all persons supplying the principal with labor and materials in the prosecution of the work provided for in said contract, and any such authorized extension or modification thereof, then this obligation to be void; otherwise to remain in full force and virtue.''

It will be observed from this statement of facts, and the recitals in Council & Lewy Company's contract and bond that this was in the assignment referred to in the textbooks signed only by the assignor, but the rights and duties of all parties were set forth and delimited by them in the contract. There is no ambiguity in the contract and bond here sued on. There is nothing left to be construed. The parties set forth their mutual obligations.

The obligation assumed by Council & Lewy Company as to the levee work, which Elkas was bound to complete by his original contract and bond with the Government, is in these words: ''the same to be performed in accordance with the terms and specifications on file in the office of the United States Government Engineer, in Memphis, Tennessee.'' The bond limited its liability so far as payment for materials and labor to that which was furnished to Council & Lewy Company. There was no effort on the part of the parties then, by the contract or the bond, to have Council & Lewy Company and their surety assume Elkas' debt for labor and materials, nor Martin & Carrithers Brothers' debt for labor and materials. The appellees here assumed a prospective obligation. That is clear and unequivocal. At the time the contract was entered into on January 14, 1933, Elkas was liable for labor and materials incurred up to that date

under his original contract and bond. He owed the debt by his bond to the Government. See 40 U. S. C. A., sec. 270. Likewise, Martin & Carrithers Brothers owed these debts, but the language which we have quoted demonstrates that Council & Lewy Company did not assume the payment of the debts which had accrued against the assignor, Martin & Carrithers Brothers, for which Dave Elkas was primarily liable under the Act of Congress to which we have referred. It is also demonstrated by the judgment rendered by the federal District Court at Clarksdale. The bond is to be construed in conjunction with the contract. The bond of the Maryland Casualty Company is to be construed with the contract assigned to the Council & Lewy Company, and it is clear from the bond that the surety only agreed to become responsible for material and labor furnished to its principal to-wit: The Council & Lewy Company. There is no room to imply a contract to pay past-due debts on the part of the assignee. The record indicates that Elkas and the assignor, Martin & Carrithers Brothers, knew or should have known of these debts; and the language of the contract is so plain as to exclude all implication. In other words, the doctrine of expressio unius must be applied to this contract and bond. See 13 C. J. 537, Paragraph 12, 17 C. J. S., Contracts, sec. 312.

The record shows that the monies earned by the assignor were promptly paid over to Council & Lewy Company; and it is agreed in this record that sums of money were seasonably paid over to the assignor. However, the record does not show what became of the ten per cent retainage which Elkas had a right to retain under the contract made on January 3, 1933; nor does it show whether or not the assignors, Martin & Carrithers Brothers, expended this money for labor and materials on this item—L-290-B. It is not even contended that it was not so paid out. It was imperative that Elkas perform his contract with the Government. He evidently realized that he could not complete his contract as he assigned

same and required bond therefor. He is bound by the terms of that contract and the bond. No obligation was assumed by Council & Lewy Company to pay his debts. Elkas was primarily liable for the debts incurred by him for labor and materials prior to the assignment of the contract to Council & Lewy Company. He was liable under his bond and the Act of Congress cited above. The United States Fidelity & Guaranty Company, as Elkas' surety, could not acquire any right by that assignment other than Elkas had against Council & Lewy Company and its surety. But, it is said that a vast sum of money, considering the size of the contract, was paid over by Elkas under the assignment contract of January 14, 1933, to Council & Lewy Company; and that therefore, by the assignment, Elkas, materialmen and laborers acquired the right to look to this fund so paid over as a trust fund by subrogation, and that the United States Fidelity & Guaranty Company having paid the claims are now subrogated to the rights of the laborers and materialmen for labor and materials furnished to Elkas and Martin & Carrithers Brothers. Council & Lewy Company and their surety did not assume any obligation to the laborers and materialmen who had claims against Elkas and Martin & Carrithers Brothers. Their claim was against Elkas and his surety primarily, or the laborers and materialmen who contracted with them. They did not have a claim against Council & Lewy Company as none was created by its contract in the so-called bi-lateral assignment and bond. Such an idea was excluded by the terms of the contract and bond.

It is insisted that Section 2276, Code of 1930, is applied here and read into the bond of the Maryland Casualty Company. That statute, in substance, requires that, where an owner of a building lets a private contract for construction and takes a bond, the bond inure to the benefit of the laborers and materialmen. We have already held that the contract and bond in this case was not retroactive, but, on the contrary, shows on its face

that the parties clearly made a contract to be performed in the future, and was not a contract or bond to assume any liabilities incurred in the past. There is nothing in Section 2276 that indicates an intention on the part of the Legislature, as expressed in that statute, to require a retroactive or retrospective bond. A retroactive or retrospective enactment must be clearly expressed as such. Statutes are usually construed by the courts to be prospective and operate only in the future. See Hester, Sheriff, v. Copiah County, 186 Miss. 716, 191 So. 496; Nunnery v. Baker, 188 Miss. 596, 195 So. 314; and Fidelity & Deposit Company v. Merchants' & Marine Bank of Pascagoula, 169 Miss. 755, 151 So. 373, 154 So. 260.

It is now settled in this State that Section 2276 does not cover labor and materials furnished to a subcontractor. See Alabama Marble Company v. United States Fidelity & Guaranty Company et al., 146 Miss. 414, 111 So. 573. In so far as this statute is concerned, Council & Lewy Company would be treated as a principal contractor, and there is no contention here that any item of labor or material was furnished to Council & Lewy Company. Martin & Carrithers Brothers, under that statute, would become subcontractors of Council & Lewy Company after January 14, 1933.

The final decree of the chancellor coincides with the conclusions reached by this court. We do not know, and it is not disclosed by the record, by what process of reasoning the court below reached the result, but can only conclude that the decree of the court below is manifestly correct.

Affirmed.

### On Suggestion of Error.

**Alexander, J.,** delivered the opinion of the court on suggestion of error.

The suggestion of error here attacks not only the substantive findings of the original opinion, but seeks to

point out what are, at most, irregularities of expression or gratuitous comments upon minor aspects of the litigation. Although conceding the possibility that such inadvertencies may be found, we adhere to the conclusions reached, as well as to the bases therefor.

Suggestion of error overruled.